(211 P.3d 175)
No. 100,988

ROBERT K. SCHEIDT, *Appellee*, v. TEAKWOOD CABINET & FIXTURE, INC., and OHIO CASUALTY INSURANCE COMPANY, *Appellants*, and LIBERTY MUTUAL INSURANCE, *Respondent*.

Opinion filed July 2, 2009.

*Michael P. Bandré*, of Couch, Pierce, King & Hoffmeister, of Overland Park, for appellants.

*John L. Carmichael*, of Conlee, Schmidt & Emerson, L.L.P., of Wichita, for appellee.

Before MALONE, P.J., LEBEN and STANDRIDGE, JJ.

LEBEN, J.: Had the Kansas Supreme Court's opinion in *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 154 P.3d 494 (2007), been applied to Robert Scheidt's 2002 settlement award with his employer, Teakwood Cabinet and Fixture, his injury to both arms would have been a scheduled injury rather than the 22.5% whole-body, permanent partial general disability that the parties agreed upon in their settlement. But *Casco* was decided well after Scheidt's award became final, and the award was left open for coverage of further medical treatment and possible modification. One modification available under Kansas law for a whole-body disability—but not for a scheduled injury—is a work-disability award to compensate in part for future wage loss deemed attributable to

the work-related injury. When Scheidt requested modification of his award to account for wage losses, Teakwood attempted to apply *Casco*'s holding with the effect that Scheidt's injury would be a scheduled injury and thus not eligible for a work-disability award for his lost wages. But the Workers Compensation Board correctly held that Scheidt's original award became final in 2002, so it was not subject to redetermination, and that Scheidt had shown an increase in his work disability meriting the modification, which was likewise correctly calculated. As the Board's decision was correct, we affirm it.

*Teakwood Cannot Have* Casco *Applied to Scheidt's Modification Hearing.*

Scheidt requested a modification of his award due to a loss in wages. At the time of his settlement hearing, Scheidt had no wage loss because he had gone back to work for Teakwood. But Teakwood closed in 2005, and Scheidt couldn't find work at a comparable wage to his past employment.

Teakwood opposed the modification based on *Casco*. Teakwood argued that Scheidt should have had only a scheduled injury, which doesn't qualify for a work-disability award. Although Teakwood did not seek to modify the original award itself to make it conform with the *Casco* ruling, Teakwood opposed any further modification based on the apparent misunderstanding of Kansas law that formed the basis of the settlement.

*Casco* overruled a case over 70 years old, *Honn v. Elliott*, 132 Kan. 454, 29 P. 719 (1931), under which parallel injuries to both feet or both arms were treated as a permanent partial general disability rather than as a scheduled injury. But *Casco* arguably represented no real change in Kansas law because the statutes in effect from 1931 to the present have remained substantially unchanged in their definition of scheduled and whole-body disabilities. See *Casco*, 283 Kan. at 521-23. Thus, Teakwood argued that Kansas law simply does not allow a work-disability award to a person with Scheidt's injuries, which should have been a scheduled injury under *Casco*'s interpretation of the statutes that were already in place in 2002. On the other hand, Scheidt argued that the 2002 award

was for a whole-body disability, so he should be entitled to a work-disability award in a modification proceeding.

This dispute is resolved by clarifying the nature both of the original award and of a modification proceeding. A workers'-compensation award is in most respects like a court judgment and subject to res judicata: issues necessarily decided in determining the award may not be relitigated unless specifically provided for by statute. See *Randall v. Pepsi-Cola Bottling Co., Inc.*, 212 Kan. 392, 396, 510 P.2d 1190 (1973); *Bazil v. Detroit Diesel Central Remanufacturing*, 2008 WL 5401467, at *5 (Kan. App. 2008) (unpublished opinion). The very nature of the employee's disability is an issue that must be decided in every final award, and both Scheidt and Teakwood agreed in a written stipulation that he had a 22.5% permanent partial general disability, not a scheduled injury. An administrative law judge approved that settlement, and neither side appealed the judge's ruling.

Given that workers'-compensation awards are much like court judgments and subject to res judicata, one would expect that the very nature of the injury—a central aspect of the award—would not be subject to relitigation. But the legislature could make it so by statute, so we turn next to the statutory authority for modification: K.S.A. 44-528(a). In the portion relevant to Scheidt's case, that statute provides that an award may be modified based on evidence "that the functional impairment or work disability of the employee has increased or diminished." In such a case, the administrative law judge "may modify such award, . . . upon such terms as may be just, by increasing or diminishing the compensation subject to the limitations provided in the workers compensation act." So the statute provides for modification when an employee's functional impairment or work disability has changed but says nothing about modifying an award when caselaw changes. And the statute provides for a modification either increasing or decreasing *the compensation*, not modifying the award's determination of the very nature of the employee's disability. We find no suggestion in the statute that the nature of the employee's disability may be relitigated in a modification proceeding.

We conclude, then, that the finding made in the 2002 award that Scheidt had a 22.5% whole-body injury, not a scheduled injury, is binding on the parties in a proceeding to modify that award. Teakwood may not use the *Casco* decision in an attempt to modify the necessary findings that were made in Scheidt's 2002 award,

Our court has previously concluded that the *Casco* ruling should be applied to all workers'-compensation cases that were pending when *Casco* was decided. *Myers v. Lincoln Center OB/GYN*, 39 Kan. App. 2d 372, Syl. ¶ 4, 180 P.3d 584, *rev. denied* 286 Kan. 1179 (2008). We agree, but that doesn't determine the issue in Scheidt's case. The *Myers* appeal of the initial award was still pending when *Casco* was decided; thus, the rule announced in *Casco* was properly applied as it reflected a revised interpretation of existing statutes, not an actual change in the workers'-compensation statutes. In Scheidt's case, however, the initial award came 5 years before *Casco*, and Scheidt's award resolved the essential issues of the case and may not be relitigated.

The issue we've just addressed is purely a legal issue, so the Board's view on this issue, while persuasive, is not binding on us. See *Graham v. Dokter Trucking Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007). But the Board reached the same conclusion we have: it noted that the 2002 settlement award became final—and thus not subject to redetermination—when no party appealed from it. Thus, the Board concluded, "[t]he doctrine of res judicata applies to the determination that [Scheidt's] impairment is to the body as a whole." We agree.

*For Inclusion in a Task-Loss Assessment, the Work Performed Must Be Substantial and Gainful.*

Teakwood also claims on appeal that the Board's calculation of Scheidt's work-disability award was improperly calculated. A work-disability award is based on the average of two percentages: (a) the percentage to which the employee has lost the ability to perform the work tasks performed "in any substantial gainful employment" in the 15 years before the accident and (b) the percentage loss in the employee's average weekly wage. The task-loss evidence must be presented through a physician's opinion. See K.S.A. 44-510e(a);

*Gutierrez v. Dold Foods, Inc.*, 40 Kan. App. 2d 1135, 1137-38, 199 P.3d 798 (2009).

Teakwood argues that the Workers Compensation Board should have used a task-loss percentage of zero, rather than 61%, because Scheidt's physician did not consider his ability to do lawnmowing work when the doctor provided his task-loss opinion. At some points in time, and especially after Teakwood laid Scheidt off, he supplemented his income through a lawn-care business. Because the statute requires a physician's opinion regarding task loss and Scheidt's physician didn't consider tasks from the lawn-care business, Teakwood argues that the Workers Compensation Board had no acceptable proof to rely upon in determining Scheidt's task loss.

But the Board found that Scheidt didn't have "substantial gainful employment" from the lawn-care business in the 15 years before the April 2001 injury that was settled in 2002. We must accept the factual findings of the Board when substantial evidence supports them. See K.S.A. 44-556(a); L. 2009, ch. 109, sec. 28 (amending K.S.A. 77-621). And substantial evidence supports the Board's finding.

Scheidt testified that when he began the lawn-care business with his brother in 2000, his brother did most of the work and that he was mostly the person financing it. Scheidt testified that he only worked for the business 8 to 10 hours per week during the summers from 2000 to 2005 and that some weeks he didn't work at all because there was nothing for him to mow. Although working 8 to 10 hours per week on a seasonal basis could be considered substantial employment in some cases, an appellate court must uphold factual findings supported by the evidence even though the fact-finder might have made different findings. *Graham*, 284 Kan. at 554. Scheidt testified that his brother did most of the work when the business started in 2000, and his injury in April 2001 came before the bulk of the seasonal lawn-care business would have started that year. Because substantial evidence supports the Board's finding that Scheidt didn't have substantial gainful employment from the lawn-care business before his April 2001 injury, the Board did not err by relying upon the testimony of Scheidt's

physician about Scheidt's task loss, even though the task list he used didn't include tasks related to the lawn-care business.

*An Issue Not Argued in an Administrative Hearing Will Not Be Considered on Appeal.*

Teakwood seeks to raise one additional issue on appeal, but it was not raised before either the administrative law judge or the Workers Compensation Board. The Workers Compensation Board had two separate claims by Scheidt before it—one for modification of the 2002 award and another for a new neck injury sustained before Teakwood closed. Neither party appealed the award to Scheidt regarding the neck injury, but Teakwood now claims on appeal that Scheidt received a duplicative work-disability award in the two cases. This argument could—and should—have been raised in the administrative proceedings. Teakwood knew throughout those proceedings that Scheidt was seeking a work-disability award in both cases. An appellate court will not consider an issue in a workers'-compensation appeal if it was not raised in the administrative hearing. *Graham*, 284 Kan. at 555; *Peterson v. Garvey Elevators, Inc.*, 252 Kan. 976, 980, 850 P.2d 893 (1993).

The decision of the Workers Compensation Board is affirmed.