NOT DESIGNATED FOR PUBLICATION

No. 118,332

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

VIET HOANG,
*Appellant*,

v.

METAL FAB, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed July 27, 2018. Appeal dismissed.

*Jan L. Fisher*, of McCullough, Wareheim, & LaBunker, of Topeka, for appellant.

*P. Kelly Donley* and *Dallas L. Rakestraw*, of McDonald Tinker PA, of Wichita, for appellee.

Before GREEN, P.J., MCANANY and BRUNS, JJ.

PER CURIAM: Viet Hoang appeals the decision of the Workers Compensation Board (Board), arguing that it erred when it denied compensation for a preexisting condition. Hoang argues that the Board erred in two ways. First, he asserts that based on a stipulation by Metal Fab, Inc. (Metal Fab), the Board had to conclude that his accident was the prevailing factor for his injury, medical condition, and resulting disability or impairment, which included his preexisting condition. Second, based on his interpretation of the Workers Compensation Act (Act), Hoang argues that he did not need to establish that his accident was the prevailing factor resulting in an aggravation of his preexisting condition.

1

Nevertheless, Hoang has raised both these arguments for the first time on appeal. Issues not raised before the trial court cannot be raised on appeal. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). As a result, we dismiss.

On April 19, 1989, while Hoang was working for National Beef, Hoang lacerated himself with a knife. The laceration extended across Hoang's right wrist. An emergency room doctor initially treated Hoang's injury. About a month later, Hoang sought additional medical attention for his laceration.

When Hoang sought additional medical attention, a doctor known only as Dr. Gilbert treated him. Dr. Gilbert noted that Hoang lacked sensation and appropriate trophic changes in his median nerve. Dr. Gilbert also determined that Hoang suffered from neuroma-in-continuity, meaning the nerve endings of Hoang's median nerve were not healing properly. Dr. Gilbert performed surgery to correct Hoang's neuroma-in-continuity.

On October 20, 1989, Hoang first met with Dr. Garret Watts. Although not entirely clear from the record on appeal, it seems Hoang became Dr. Watts' patient as part of a workers compensation case against National Beef. Dr. Watts' notes are for National Beef and its insurance carrier.

According to the notes from Dr. Watts' October 20, 1989 meeting, Hoang's laceration went across "the central palmar region" of his right wrist. Hoang complained of odd sensations, numbness, and temperature changes in his right hand and fingers. He also complained about pain in his right hand, forearm, elbow, and shoulder. Yet, Dr. Watts noted that Hoang had use of his right forearm, elbow, and shoulder. Dr. Watts noted that Hoang's ulnar nerve did not appear damaged. The PDR Medical Dictionary

states that both the ulnar and median nerve run from the neck and then through the shoulder, arm, elbow, forearm, wrist, hand, and fingers; the ulnar nerve runs through the ring finger and little finger while the median nerve runs through the index, middle, and ring finger as well as the thumb. The nerves control these parts, and often the nerves overlap each other. See PDR Medical Dictionary 1298, 1303 (3d ed. 2006).

Hoang continued under Dr. Watts' treatment from October 20, 1989, until June 7, 1990. During this time, Hoang attended occupational therapy. Although Hoang seemed to recover physiologically, he still complained of pain in his "entire right upper extremity." Moreover, an electromyography test revealed that Hoang had "severe distal medial nerve dysfunction but with some distal nerve function."

Dr. Watts ultimately diagnosed Hoang with causalgia, which is also called complex regional pain syndrome (CRPS) or reflex sympathetic dystrophy (RSD). The PDR Medical Dictionary 1895 (3d ed. 2006), states that CRPS consists of "diffuse persistent pain usually in an extremity often associated with vasomotor disturbances, trophic changes, and limitation or immobility of joints." Dr. Watts' final notes to National Beef and its insurance carrier were as follows:

> "Diagnosis: As previously listed with *moderate causalgia* pain right arm.

> "[C]onsideration of the patient's diagnoses and problems lead me to believe he has a *major causalgia* of the right arm. According to the grading scheme in the AMA guide [table 10][,] he has a grade V level of affectation of his right arm due to pain discomfort and loss of sensation. This gives 85% of the maximum value of the median nerve below the mid-forearm which is 61%. This equals 52% of the upper extremity which equals 31% of the whole person. I do not feel that any further therapy is indicated for the patient. He may improve slowly as time goes by as there has been evidence of some re-innervation of the median distribution. This may very well take several years before the amount of improvement can be thoroughly evaluated. . . ."

3

"Work restrictions would be light duty use of the right hand with negligible constant lifting or grasping." (Emphasis added.)

It is undisputed that Hoang received Social Security benefits for "six or seven years" because of his injury at National Beef. Moreover, Hoang did not work during this six- or seven-year period. It is not entirely clear, however, why, or even if, Hoang stopped receiving the Social Security benefits.

Nevertheless, in 1996 or 1997, Hoang took a job with Metal Fab. On August 8, 2013, Hoang fell and lacerated his right elbow while at work. Hoang's job was labor intensive. The physical requirements included pulling, pushing, kneeling, walking, bending, and lifting 50 pounds often and 60 or more pounds sometimes. Hoang had been trying to join two large metal tubes with a hand lock when he injured himself. Metal Fab employees immediately brought Hoang to a hospital emergency room where he received stitches.

Five days later, Hoang sought the medical services of Dr. Patrick Do, who was an authorized treating physician. Dr. Do performed surgery on Hoang's elbow to repair damage to his ulnar nerve. After the surgery, Dr. Do authorized Hoang to return to work but prohibited him from reaching over his head with his right arm. Dr. Do also ordered that Hoang attend physical therapy.

On August 22, 2013, Hoang requested a preliminary hearing before an administrative law judge (ALJ) regarding the "cut to [his] right upper extremity." Hoang specifically requested payment for the "medical treatment to his right shoulder," as well as "temporary total disability[,] temporary partial disability[,] and accommodated work."

Meanwhile, at his attorney's request, on September 26, 2013, Hoang met with Dr. Pedro Murati. At their initial meeting, Dr. Murati diagnosed Hoang with CRPS in the

right upper extremity. Dr. Murati opined that his work injury at Metal Fab was the prevailing factor for his CRPS. Dr. Murati asserted that Hoang should undergo several different treatments, including pain management treatment. Hoang then amended his workers compensation claim to request payment for all treatments recommended by Dr. Murati.

On December 12, 2013, Hoang went back to Dr. Do. Dr. Do recommended that Hoang continue physical therapy, but Hoang asked Dr. Do to release him from treatment. Therefore, Dr. Do listed Hoang at maximum medical improvement. Dr. Do determined that Hoang suffered 24% permanent partial impairment of the right upper extremity, which consisted of 12% for lack of elbow flexion, 4% for lack of elbow extension, 4% for ulnar nerve sensory deficit, and 6% for ulnar nerve motor deficit, with permanent work restrictions. Dr. Do's notes never mentioned CRPS.

Hoang then sought pain management treatment from Dr. Xavier Ng. At their initial meeting on March 28, 2014, Dr. Ng found that Hoang's upper right extremity was swollen with "hypersensitivity to the touch." As Dr. Ng's treatment continued, Hoang had continued numbness, pain in the right hand, and signs of contracture.

While treating Hoang, Dr. Ng discovered that Hoang had previously been diagnosed with CRPS in his right upper extremity by Dr. Watts as a result of his National Beef injury. Up to this point, it seems that Hoang had not made any of his doctors aware of his National Beef injury or his resulting CRPS.

At their October 2014 meeting, Dr. Ng. asked Hoang if he had ever experienced similar symptoms in his right upper extremity before his work injury at Metal Fab. Hoang told Dr. Ng that he had not. In November 2014, Dr. Ng concluded that there was a "reasonable degree of probability that [Hoang's] current symptoms and complaints," were the "result of his previous injury." Dr. Ng emphasized the "inconsistent[cy]" between the

5

"[medical] history that [Hoang] had provided [him]" at the examination compared to Hoang's "medical records" in making his finding.

Next, Hoang's attorney asked Dr. Murati whether he still believed that Hoang's right upper extremity issues resulted from his injury at Metal Fab given Hoang's preexisting CRPS. Dr. Murati concluded that because there was no evidence that Hoang sought medical treatment for right upper extremity pain between 1990 and 2013, Hoang's right upper extremity CRPS resolved before his 2013 injury at Metal Fab. Thus, Dr. Murati concluded that Hoang's accident at Metal Fab was the prevailing factor for all of Hoang's current right upper extremity issues.

Metal Fab responded by applying for a preliminary hearing to terminate Hoang's ongoing pain management treatment based on Dr. Ng's finding that Hoang's "current need for medical treatment relate[d] to a preexisting condition." Following a preliminary hearing, the ALJ appointed Dr. Aly Gadalla as a neutral physician to perform an independent medical examination of Hoang. The ALJ specifically ordered Dr. Gadalla to offer his opinions on "diagnosis; treatment recommendations, if any; and causation, including whether [Hoang's] alleged work accident [was] the prevailing factor in causing [his] injury, need for treatment, or resulting impairment or disability, if any."

Dr. Gadalla reviewed all of Hoang's medical records. Dr. Gadalla noted the fact that Dr. Watts stated that Hoang had a cut to the central palmar region of the right wrist; Dr. Gadalla described this cut as an injury to the "central ulnar region of the right wrist." Based on Hoang's medical examination and records, Dr. Gadalla concluded that Hoang's "current complaints and diagnoses of right upper extremity pain [were] an exacerbation of his preexisting injury in 1990 [for which] he had already received 31% whole person impairment." Thus, he concluded that Hoang's current symptoms and complaints are most likely a result of his previous injury that he sustained in 1990. Dr. Gadalla placed Hoang

6

at maximum medical improvement for his Metal Fab related injury as of December 12, 2013; this was the same date as Hoang's last appointment with Dr. Do.

On March 13, 2015, the ALJ entered the following order:

"In light of the opinions of Dr. Gadalla, the court-ordered medical examiner, the Court finds that Claimant's work injury is not the prevailing factor for his current ongoing need for medical treatment. As a result, the pain management treatment being provided by Dr. Ng is not related to the work accident and is no longer authorized by the Court. Claimant's request for continued right upper extremity medical treatment is denied."

Because his pain management treatment was no longer covered, Hoang stopped seeing Dr. Ng.

On April 8, 2015, Hoang again visited Dr. Murati at his attorney's request for a new medical evaluation. At this exam, Dr. Murati diagnosed Hoang with damage to the ulnar nerve, CRPS in the right upper extremity, and a cervical sprain. Dr. Murati's cervical sprain diagnosis was the first time anyone had diagnosed Hoang with a cervical sprain. He then recommended that Hoang continue with pain management and yearly check-ups "on his right upper extremity." He repeated that he believed Hoang's current symptoms were a direct result from the Metal Fab injury. He explained that there "have been clear-cut obvious structural changes that [would have] prevent[ed Hoang] from performing his vocation as described."

He lastly concluded that Hoang had these impairments: (1) a 16% right upper extremity impairment based on the loss of motion in the right shoulder; (2) a 16% right upper extremity impairment based on the loss of motion in the right elbow; (3) a 20% impairment for the right upper extremity CRPS; and (4) a 10% upper extremity impairment for damage to the ulnar nerve. Dr. Murati explained that "[t]hese right upper extremity impairments combine for 50% right upper extremity impairment, which

7

converts for 30% whole person impairment. Dr. Murati combined this 30% whole person impairment with the 5% whole person impairment he assigned to Hoang's cervical sprain, resulting in a total whole person impairment rating of 34%.

On June 15, 2015, the parties had a prehearing settlement conference. Because the parties disputed the nature and extent of Hoang's impairment, the ALJ appointed Dr. Terrance Pratt as a neutral physician to perform an independent medical examination of Hoang. The ALJ asked Dr. Pratt to "offer opinions as to [Hoang's] permanent impairment rating and need for future medical treatment, if any."

On October 15, 2015, Dr. Pratt reviewed all of Hoang's medical records and examined Hoang. Dr. Pratt provided these opinions about the cause of Hoang's medical conditions:

"For cervicothoracic complaints, those symptoms were documented, but only in Dr. Murati's report. I did not note it documented in any of the other records or during his treatment for the right upper extremity involvement. I could not relate that directly to his report vocationally related event. . . . In relationship to the findings suggesting a [CRPS], that was diagnosed in relationship to his involvement in 1989, or was preexisting the reported event in 2013. It is probable that the event in 2013 was a trigger for recurrent findings suggesting a [CRPS], but I would not consider that as the prevailing factor for the involvement. *He had statements in the past concerning permanency for the [CRPS] as well as involvement of his median nerve. For the shoulder involvement, he was noted in 1990 to have stiffness on his right shoulder. There was no report of a specific injury to his right shoulder in relationship to the 2013 event. The limitations in range of motion of the shoulder would relate to his [CRPS]. Similarly, distal upper extremity limitations in range of motion would relate to his history of [CRPS] as well. Today, there were some limitations in consistency of the examination when comparing range identified today with prior assessments and also there was giveaway weakness diffusely for the upper extremity on the right. Sensory to two-point discrimination, he could not state with consistency the difference between one and two points for all of the fingers and thumb on*

8

*the right today.* He did have an elbow laceration with joint involvement and did have involvement of his ulnar nerve in relationship to his vocationally related activities in 2013 as the prevailing factor. I would point out that elbow range was noted as full in 1989." (Emphasis added.)

Dr. Pratt then asserted that the following impairment ratings applied to Hoang:

"I would state that the residual involvement in relationship to the ulnar nerve involvement at the elbow would be considered as moderate, or 30% of the upper extremity . . . For the elbow with loss of range of motion, . . . 13% . . . . Other range was full. Combining the permanency utilizing the Combined Values Chart, 30 and 13 combine for 39% of the right upper extremity for the elbow on a functional basis."

After receiving Dr. Pratt's opinions, Hoang once again went to Dr. Murati. Upon examining Hoang on January 19, 2016, Dr. Murati determined that Hoang had damage to his left upper extremity as a result of his 2013 accident at Metal Fab; Dr. Murati opined that Hoang was overusing his left shoulder because of the damage to his right upper extremity. Following his 2013 accident at Metal Fab, Hoang returned to work at Metal Fab but with a new job as a machine operator. Hoang used only his left arm to operate the machine.

On January 15, 2016, Hoang amended his application for hearing to include the left upper extremity and left shoulder injuries. Hoang also requested medical treatment for the alleged injuries to his left upper extremity and left shoulder. Metal Fab responded that all prior medical examinations supported that any of Hoang's ongoing pain was related to his 1989 National Beef injury.

Eventually, the ALJ ordered Dr. Pratt to conduct a second independent medical examination specifically related to Hoang's left upper extremity and left shoulder. Dr. Pratt determined that any pain Hoang had in his left upper extremity and left shoulder had

9

nothing to do with his 2013 work accident. Instead, it involved the repetitive nature of Hoang's job which involved his left upper extremity. On August 8, 2016, the ALJ adopted Dr. Pratt's opinion, denying Hoang's request for left upper extremity medical treatment.

In relevant part, the ALJ concluded:

"Based upon the reports of the various physicians, it is clear that Claimant has developed overuse injuries of his left upper extremity as a result of doing his repetitive job duties with only his left arm because of his right upper extremity condition. At issue, however, is the question of whether the right upper extremity condition that has caused Claimant to overuse his left upper extremity at work is the result of his August 8, 2013, work accident or his preexisting unrelated condition.

"Claimant told Dr. Pratt that his left upper extremity symptoms developed gradually approximately a year after his August 8, 2013, work accident. By the time Dr. Ng was providing Claimant treatment in October 2014, just slightly more than a year after Claimant's work accident, Dr. Ng opined that Claimant's ongoing right upper extremity symptoms were unrelated to his work accident and rather were the result of his preexisting [CRPS]. This diagnosis and opinion was confirmed by the court-ordered independent medical examination of Dr. Gadalla, who believed that Claimant's ongoing right upper extremity symptoms were related to his preexisting [CRPS] rather than his work accident.

"At the time Claimant first saw Dr. Pratt, he still had significant ongoing right upper extremity complaints as well as a diagnosis of [CRPS]. At the time of his second examination, Dr. Pratt opined that Claimant's left upper extremity symptoms were the result of his 'right upper extremity involvement with a [CRPS].' Even Claimant's own expert, Dr. Murati, believed that Claimant's left upper extremity complaints were 'an obvious and probable consequence' of his [CRPS]. None of the physicians who examined Claimant opined that his left upper extremity complaints were the result of his August 8, 2013, work accident.

"As discussed above and previously noted by the Court in prior orders, Claimant's right upper extremity [CRPS] and ongoing complaints are not related to his August 8, 2013, work accident and rather are related to a preexisting injury. The Court

10

finds that Claimant's preexisting injury and ongoing complaints related to [CRPS] are the prevailing factor in his development of overuse injuries to his left upper extremity. . . . Claimant's request for left upper extremity medical treatment is denied."

Next, the parties proceeded to have a regular hearing. At the outset of this hearing, Metal Fab stipulated that Hoang's personal injury arose out of and in the course of his employment and that the accident was the prevailing factor causing Hoang's injury, medical condition, and resulting disability or impairment. Yet, Hoang also alleged that the parties disputed the nature and extent of his disability. Hoang then testified about both his 1989 National Beef injury and his 2013 Metal Fab injury, as well as his CRPS.

After the regular hearing, Hoang and Metal Fab stipulated to the admission of his medical records from Dr. Watts, Dr. Do, Dr. Murati, and Dr. Ng. In his submission letter, Hoang's sole argument was that Dr. Murati's opinions about CRPS were more credible than Dr. Ng's opinions because Dr. Murati's opinion considered "a much more detailed history of [his] previous injury." Hoang alleged that he worked at Metal Fab with no symptoms of CRPS in his right arm until his work accident in 2013. In its letter, citing Dr. Ng's, Dr. Gadalla's, and Dr. Pratt's opinions, Metal Fab argued that "Dr. Muarti's belief that Hoang's accident caused [Hoang's CRPS] does not hold water." Metal Fab also argued that the ALJ should adopt Dr. Do's 24% impairment rating, or alternatively, average the impairment rating of Dr. Do and Dr. Pratt, for a 31.5% impairment rating.

On March 8, 2017, the ALJ entered an award concluding permanent partial impairment of 29% to the right upper extremity. In doing so, the ALJ made the following findings:

"The Court finds that Dr. Murati's assessment of impairment related to Claimant's right shoulder and cervical spine lacks credibility, because there are no documented complaints of right shoulder cervical spine injury or treatment from any of Claimant's treating physicians. Dr. Murati is the only physician who examined Claimant who

11

believed that Claimant sustained injuries to his right shoulder or cervical spine as a result of his August 8, 2013, work accident.

"The Court further finds that Dr. Murati's assessment of impairment related to Claimant's RSD or [CRPS] diagnosis is also without merit, because Claimant has not met his burden to prove that his [CRPS] arose out of and in the course and scope of his employment with Respondent. Dr. Murati was the only physician to relate Claimant's [CRPS] condition to his August 8, 2013, work accident. Contrary to Dr. Murati, Dr. Ng, Dr. Gadalla, and Dr. Pratt all opined that Claimant's preexisting 1989 right upper extremity injury and prior diagnosis of RSD/[CRPS] was the prevailing factor in his current diagnosis of [CRPS]. Dr. Gadalla and Dr. Pratt, as Court-ordered independent medical examiners, and Dr. Ng, as Claimant's authorized treating physician, offer more credible causation opinions regarding Claimant's [CRPS] diagnosis than that of Dr. Murati, who was retained by Claimant to offer his opinions.

"However, the Court finds that Dr. Murati's opinions regarding Claimant's impairment related to his compensable August 8, 2013, work injury to his right elbow are credible. Dr. Murati, like Dr. Do, assessed a total of 24% permanent partial impairment to Claimant's upper extremity, consisting of 16% for loss of range of motion of the right elbow and 10% for ulnar nerve repair. These two ratings combine to 24% permanent partial impairment to the right upper extremity.

"Finally, Dr. Pratt, the Court-ordered independent medical examiner, assigned Claimant 39% permanent partial impairment to the right upper extremity, consisting of 30% for moderate residual involvement in relationship to the ulnar nerve involvement at the elbow, .5% for loss of range of motion of the elbow for extension, and 12.5% for loss of range of motion of the elbow for flexion. Although Dr. Pratt's total impairment rating is higher than that of Dr. Do and Dr. Murati, it is also based on range of motion deficits and ulnar nerve involvement. The Court finds that Dr. Pratt's opinions regarding Claimant's impairment of function are also credible.

"The Court finds the impairment rating opinions of Dr. Do, Dr. Murati [limited as set forth above], and Dr. Pratt to be credible and thus affords them equal weight. Averaging the 24% impairment of Dr. Do, the 24% impairment of Dr. Murati, and the 39% impairment of Dr. Pratt, the Court finds that Claimant sustained a total functional permanent partial impairment of 29% to the right upper extremity."

12

Therefore, the ALJ ruled that Hoang was "entitled to 3.14 weeks of temporary total disability compensation, at the rate of $406.57 per week, in the amount of $1,276.63, followed by 59.99 weeks of permanent partial disability compensation, at the rate of $406.57 per week, in the amount of $24,390.13 for a 29% permanent partial disability of the right arm, making a total award of $25,666.76." The ALJ ruled that Hoang was also entitled to payment for any past medical expenses. Regarding future medical treatment, the ALJ adopted Dr. Pratt's and Dr. Murati's finding that Hoang could benefit from future therapeutic medical treatment. The ALJ ruled that "future medical will be considered upon proper application."

Hoang appealed to the Board. In his brief, Hoang argued that Dr. Ng's, Dr. Gadalla's, and Dr. Pratt's opinions about his preexisting CRPS causing his ongoing CRPS were incorrect because none of their opinions "address how the previous CRPS had caused the current CRPS." Instead, he argued that the doctors asserted that because there was CRPS before, there was CRPS still. Hoang argued that "'permanent' conditions can and do change." He argued that because he had not been experiencing pain, his CRPS resulting from the 1989 National Beef injury healed, meaning his current CRPS was a new injury.

Metal Fab responded by repeating its argument that Hoang had only a 24% impairment rating based on Dr. Do's report. Alternatively, Metal Fab argued that the Board should affirm the ALJ's ruling that Hoang has a 29% impairment of the right upper extremity based on averaging the right elbow and ulnar nerve ratings of Dr. Do, Dr. Murati, and Dr. Pratt. Metal Fab stressed that Dr. Murati was the only doctor who attributed Hoang's CRPS to his 2013 injury at Metal Fab.

On September 7, 2017, the Board entered its order. The analysis of the Board's majority, in its entirety, was as follows:

"The Board adopts the judge's decision as its own. As a matter of determining the nature and extent of disability, as based on the overwhelming weight of the medical evidence, the judge correctly found only claimant's right elbow impairment to be a consequence of his injurious work accident in 2013.

"Drs. Ng, Gadalla and Pratt agree claimant's CRPS is due to his preexisting condition from 1989 and 1990. Dr. Pratt opined claimant's left upper extremity complaints relate to overuse stemming from his non-compensable right-sided CRPS. Therefore, claimant's left upper extremity impairment is not compensable.

"Of the medical evidence, only Dr. Murati supports the suggestion claimant's CRPS, asserted neck impairment or shoulder impairment is related to his August 8, 2013 injury by accident. Based on the weight of the evidence, such opinions are not well-founded.

"Only claimant's right upper extremity impairment and his corresponding need for medical treatment related to his 2013 injury are compensable. *Claimant greatly downplayed the severity of his 1989 injury and preexisting impairment*." (Emphasis added.)

A single dissenting Board member stated that he "would find [that Hoang's] CRPS was caused by his 2013 injury . . . ." The Board member objected to the majority Board's "adverse credibility determination" against Hoang. Moreover, he asserted that "[w]ith his new right elbow injury, claimant did not have what would be solely an aggravation of a preexisting condition or the rendering symptomatic of a preexisting condition."

Hoang timely petitioned this court for judicial review.

*Does Hoang Present Two New Legal Theories for the First Time on Appeal Which Should be Considered?*

On appeal, Hoang argues that the Board's decision affirming the ALJ's award as it concerns his CRPS being noncompensable was incorrect for two reasons. First, he argues that Metal Fab's stipulations before the regular hearing required the Board to conclude

14

that his ongoing CRPS resulted from his 2013 work accident at Metal Fab. Second, he argues that the Board failed to follow the plain language of the Act when it concluded that his accident was not the prevailing factor causing his CRPS.

On the other hand, Metal Fab contends that both of Hoang's arguments were not raised below. Therefore, Metal Fab argues that this court should not consider these arguments for the first time on appeal. We agree.

*Stipulation Argument*

Hoang's first argument involves Metal Fab's stipulations before the ALJ. At the regular hearing, Metal Fab stipulated that Hoang's personal injury arose out of and in the course of his employment and that the accident was the prevailing factor causing Hoang's injury, medical condition, and resulting disability or impairment. On appeal, Hoang argues that based on this stipulation, the ALJ and the Board had to conclude that his ongoing CRPS resulted from his 2013 work injury. This is because the stipulation established that his accident was the prevailing factor for his ongoing CRPS for which he claimed he was impaired. Accordingly, Hoang argues that this court must reverse the Board's order.

Metal Fab, however, asserts that Hoang's stipulation argument is not properly before this court because Hoang did not raise this argument before the ALJ or the Board. Metal Fab points out that in his claimant's submission letter to the ALJ and brief to the Board, Hoang merely stated that the issues before the ALJ were "the nature and extent of [his] impairment" and whether he should be "awarded future medical treatment." Metal Fab contends that Hoang's current argument is both false and disingenuous.

In his reply brief, Hoang admits that he never argued that he was automatically entitled to compensation because of Metal Fab's stipulations below. But Hoang asserts

15

that he "could not anticipate that the ALJ would ignore the stipulation concerning the prevailing factor. As such, it [was] impossible for [him] to identify the issue before the ALJ."

Generally, this court will not consider issues raised for the first time on appeal. Moreover, as Metal Fab points out in its letter of additional authority that in *Jones v. U.S.D. No. 259*, 55 Kan. App. 2d 567, 574, 419 P.3d 62 (2018), a recent workers compensation case, this court refused to consider the claimant's estoppel argument raised for the first time on appeal. This general rule also applies in workers compensation appeals when the claimant has failed to raise an argument at the administrative hearing. *Scheidt v. Teakwood Cabinet & Fixture, Inc.*, 42 Kan. App. 2d 259, 264, 211 P.3d 175 (2009). Indeed, K.S.A. 2017 Supp. 77-617 of the Kansas Judicial Review Act (KJRA) states that for issues not raised at the agency level, an appellate court should only review an appellant's argument in four limited circumstances.

But on appeal, Hoang has neglected to argue that any of the four limited circumstances applies to his appeal. Additionally, a review of the procedural history of this case establishes that Hoang's contention that it was impossible for him to raise his argument below is incorrect.

For instance, K.A.R. 51-3-8(a) (2017 Supp.) lists a series of questions that the ALJ should ask the parties in every case to determine what issues can be stipulated to and what issues remain in dispute. In accordance with K.A.R. 51-3-8(a)(6), (11), at the December 1, 2016 regular hearing, the ALJ asked Metal Fab these questions: "Does respondent admit that claimant's alleged personal injury 'arose out of and in the course' of claimant's employment?"; and (2) "Does respondent admit that the accident or repetitive trauma was the prevailing factor causing the injury, the medical condition, and the resulting disability or impairment?" Metal Fab's attorney answered affirmatively to both questions.

16

Nevertheless, K.A.R. 51-3-8(a)(16) states that the ALJ should ask both parties "[w]hat was the nature and extent of the disability suffered as a result of the alleged injury." K.A.R. 51-3-8(a)(20) states that the ALJ should ask whether "the parties [have] agreed upon a functional impairment rating." Although the ALJ did not ask these specific questions, the ALJ did ask the following question: "Is the nature and extent of disability an issue?" Hoang's attorney responded that the nature and extent of Hoang's disability was at issue.

After expressly conceding that a dispute existed as to the nature of Hoang's disabillity, Hoang testified. Both his attorney and Metal Fab's attorney asked Hoang questions about his 1989 injury, his 2013 injury, and the CRPS pain he experienced over the last three decades.

Then, on January 26, 2017, in his submission letter to the ALJ, and later on April 27, 2017, in his brief to the Board, Hoang continued to dispute whether his 2013 work injury caused his current CRPS. Yet, Hoang never alleged that he was necessarily entitled to compensation for his CRPS because Metal Fab had stipulated that his 2013 work accident was the prevailing factor for his ongoing CRPS.

Thus, in sum, Hoang knew about Metal Fab's stipulations as of the regular hearing, which was more than a month before he filed his submission letter to the ALJ. In turn, he could have argued that Metal Fab had stipulated to the fact that his 2013 work accident was the prevailing factor for his ongoing CRPS at the actual regular hearing. Moreover, he certainly could have raised this argument in his submission letter to the ALJ or on appeal to the Board. Thus, Hoang could have raised the stipulation argument below.

In addition, K.A.R. 51-3-8(e) states that parties may withdraw admissions or stipulations upon the ALJ's approval. In considering whether to allow the party to

17

withdraw a stipulation, the ALJ must consider the "circumstances in each instance." A party's ability to withdraw a stipulation upon the ALJ's approval lends support to the position that if claimants intend to win their workers compensation claims based on respondents' stipulations, claimants would need to offer for consideration the stipulations to the ALJ. Simply put, because the regulations allow parties to move to withdraw their stipulations, workers compensation cases should not turn on unintentional stipulations by respondents without ALJs ever having an opportunity to consider the stipulations.

Next, despite Metal Fab's stipulation, it is readily apparent that both parties, the ALJ, and the Board understood that whether Hoang's 2013 accident at Metal Fab was the prevailing factor for his ongoing CRPS was still in dispute. This is evidenced by Hoang's response to the ALJ's question. Hoang explicitly stated that the nature and extent of his disability was still in dispute. Of note, in *Le v. Armour Eckrich Meats*, 52 Kan. App. 2d 189, 364 P.3d 571 (2014), a case Hoang relies on in his brief, this court recognized that when parties debate whether a work accident or a preexisting condition was the prevailing factor for a claimant's ongoing but aggravated preexisting condition, the claimant's resulting disability or impairment was in dispute. 52 Kan. App. 2d at 200. As a result, even though Metal Fab made its stipulation, Hoang explicitly told the ALJ that the parties had not agreed on the nature and extent of his disability.

In turn, it is readily apparent that both parties understood that whether Hoang's 2013 work accident was the prevailing factor for Hoang's ongoing CRPS was still in dispute. It is also readily apparent that the ALJ and the Board also believed that the parties were still disputing whether Hoang's 2013 work accident was the prevailing factor for Hoang's ongoing CRPS. But, then again, given Hoang's explicit statement and the parties' arguments in their submission letters and briefs, what else were the ALJ and the Board to believe?

18

Once more, in workers compensation cases, the burden of proof always remains on the claimant. K.S.A. 2017 Supp. 44-501b(c). More importantly, our Supreme Court has explained that "[i]t would be wholly inappropriate to permit one who creates a procedural problem at the agency level to gain advantage thereby on judicial review. This is a logical extension of the well-established invited error rule." *Catholic Housing Services, Inc. v. State Dept. of SRS*, 256 Kan. 470, 476, 886 P.2d 835 (1994). Here, the problem with Hoang's argument is not only that he did not raise it below, but also that he created a procedural problem that he now seeks to benefit from on appeal. Because he failed to raise his argument below and because he has invited error, Hoang's argument that Metal Fab's stipulation required the Board to find that his 2013 accident was the prevailing factor for his ongoing CRPS is not properly before this court.

*Prevailing Factor Argument*

Next, Hoang argues that the Board's decision was errant because it misapplied the prevailing factor test, contrary to the plain language of the Act. Metal Fab again argues that Hoang did not raise this argument below. As a result, his argument is not properly before this court. In his reply brief, Hoang admits that he is advancing a new interpretation of the Act that he did not advance below. But Hoang counters that although he may not have made the specific legal arguments below, the "issues" were before the ALJ and Board.

Hoang is correct that the "issue" of what was the prevailing factor causing his ongoing CRPS was before the ALJ and Board. Nevertheless, as Hoang has admitted, he has a new twist to his argument on appeal. Under his current interpretation of the Act, claimants do not have to establish that their work accident was the prevailing factor for the aggravation, acceleration, or exacerbation of their preexisting condition or rendering of their preexisting condition symptomatic. As a result, Hoang is no longer arguing that the work accident was the prevailing factor for his ongoing preexisting condition. Instead,

19

he now argues that he had no duty to prove his work accident was the prevailing factor for his ongoing preexisting condition.

Again, this court does not generally review issues raised for the first time on appeal. Like his stipulation argument, Hoang has not asserted that any specific exception allows him to raise this argument for the first time on appeal. Additionally, Hoang did not admit that he was raising either this argument or his stipulation argument for the first time on appeal until his reply brief. As a result, Hoang violated Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34), which requires appellants to explain why issues not raised below should be considered for the first time on appeal. Because he did not raise this argument below, we will not consider Hoang's prevailing factor argument now.

Appeal dismissed.