NOT DESIGNATED FOR PUBLICATION

No. 121,722

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SEAN HUGHES,
*Appellant*,

v.

CITY OF HUTCHINSON,
*Appellee*.


MEMORANDUM OPINION


Appeal from Workers Compensation Board. Opinion filed August 7, 2020. Affirmed.

*Mitchell W. Rice*, of Mann Wyatt & Rice, of Hutchinson, for appellant.

*William L. Townsley III* and *T. Chet Compton*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and SCHROEDER, JJ.

PER CURIAM:  Sean Hughes timely seeks judicial review of the decision of the Workers Compensation Board (the Board), finding he suffered a scheduled injury resulting in a permanent partial disability of 13% to his left shoulder while working for the City of Hutchinson (the City). He argues the Board erred in finding only a 13% permanent partial disability to his left shoulder. After our review of the record, we conclude the Board's findings were supported by substantial competent evidence, and we affirm.

1

Hughes worked as an equipment operator for the City. In October 2015, he fell while attempting to climb into the cab of a dump truck. He landed on his left side, injuring his left shoulder. The City admits he suffered an injury and timely reported the injury. In seeking health care for his left shoulder injury, he obtained an MRI on his left shoulder and consulted with an orthopedic surgeon, Dr. Daniel Prohaska. Dr. Prohaska diagnosed Hughes with a left rotator cuff tear and impingement and osteoarthritis in his left acromioclavicular (AC) joint. In November 2015, Hughes had surgery to repair the tear to his left rotator cuff and address the impingement and osteoarthritis in his left AC joint. Hughes then underwent physical therapy and had regular follow-up visits with Dr. Prohaska.

In June 2016, Hughes filed a formal workers compensation claim. At that time, he also began complaining of right shoulder pain and numbness and tingling in both hands. In July 2016, the presiding administrative law judge (ALJ) for the Division of Workers Compensation ordered an independent medical evaluation (IME) with Dr. Pat Do, an orthopedic surgeon. Dr. Do evaluated Hughes in September 2016, concluding his left shoulder injury and any resulting impairment was the result of his work accident. However, Dr. Do concluded any impairment with Hughes' right shoulder and the numbness and tingling in his hands was unrelated to his work accident.

In March 2017, Hughes underwent arthroscopic surgery to remove a loose anchor from his left shoulder from the previous operation. Hughes began additional physical therapy and rehabilitation and had regular follow-up appointments with Dr. Prohaska. In October 2017, Dr. Prohaska determined Hughes was at maximum medical improvement and imposed work restrictions of no lifting over 45 pounds, no lifting more than 10 pounds overhead, and no pushing or pulling more than 45 pounds. Dr. Prohaska rated Hughes at 12% impairment to the left shoulder.

In September 2017, the ALJ ordered another IME, and Hughes was evaluated by Dr. Steven Joyce, an orthopedic surgeon, in November 2017. Dr. Joyce determined Hughes suffered a left rotator cuff injury as a result of the fall. He also believed Hughes was at maximum medical improvement and imposed similar restrictions for lifting, pushing, and pulling. Dr. Joyce assigned a partial permanent impairment rating of 13% for Hughes' left shoulder injury. Dr. Joyce did not believe Hughes' right shoulder injury or the tingling and numbness in his hands were related to his work accident.

In February 2018, Hughes' attorney arranged for an evaluation by Dr. Robert Barnett, a clinical psychologist and rehabilitation specialist. Dr. Barnett reviewed Dr. Joyce's report and conducted a telephone interview with Hughes. At a subsequent deposition, Dr. Barnett testified: "Based on the restrictions provided by Dr. Joyce, [Hughes has] the ongoing restrictions, he has chronic pain, he has poor sleep, and morbid obesity. In my opinion, he's probably unemployable." However, Dr. Barnett stated Hughes was "not doing any of the things you would normally expect somebody to do." Specifically, Hughes had not sought job service assistance or vocational rehabilitation. And Dr. Barnett agreed Hughes was essentially not engaged in a good-faith effort to find employment.

Hughes' attorney also arranged for him to be evaluated by a psychologist, Dr. Molly Allen, in February 2018, based on Hughes' claims he was experiencing depression. Dr. Allen did not review any of Hughes' medical records but conducted an in-person interview. Dr. Allen concluded Hughes suffered from major depressive disorder and believed it was connected to his work injury. However, Dr. Allen admitted Hughes suffered from several other stressors at the time of the evaluation, including the recent death of his son, and those factors could have caused his depression independently of the work injury. Dr. Allen assigned a whole-body impairment rating of 10% but concluded Hughes had not reached maximum medical improvement. She recommended counseling

3

and possibly medication. Dr. Allen believed with treatment the impairment rating could be reduced or eliminated entirely.

At the City's request, Hughes was subsequently evaluated by Dr. Jarrod Steffan, a clinical psychologist. Dr. Steffan reviewed Dr. Allen's report and Hughes' other medical records and conducted an in-person interview with Hughes. Dr. Steffan concluded Hughes "has been engaging in significant response bias through exaggeration and/or fabrication of psychiatric symptoms and problems." Dr. Steffan did not believe that Hughes suffered from depression and did not assign any impairment rating.

After the deadline for the close of evidence, the City filed a submission letter asking the ALJ to find Hughes suffered a left shoulder injury that resulted in a scheduled injury equating to a 13% permanent partial impairment. Hughes did not file a submission letter with the ALJ. Following a hearing, the ALJ issued an award, finding Hughes had 13% impairment to his left shoulder but did not have any work-related impairment to his right shoulder. The ALJ found Dr. Steffan's opinion that Hughes did not suffer from work-related depression more credible than Dr. Allen's. Specifically, the ALJ found Dr. Steffan's methodology and testing more reliable than Dr. Allen's. The ALJ concluded even if Hughes suffered from depression, he had not met his burden to show it was related to his work injury. The ALJ also rejected Dr. Barnett's opinion that Hughes was likely unemployable, noting none of the other medical professionals shared his opinion.

Hughes appealed to the Board. He did not submit any written briefing to the Board. In his application for review to the Board, Hughes simply asserted: "The Administrative Law Judge erred in his determination of the nature and extent of the Claimant's disability." The Board found Hughes had not proven his depression or right shoulder injury was related to his left shoulder work injury. The Board affirmed the ALJ's award of 13% impairment as a scheduled injury to Hughes' left shoulder.

4

*Standard of Review*

Injuries like Hughes' are controlled by the Kansas Workers Compensation Act, K.S.A. 2019 Supp. 44-501 et seq. Our review is subject to the provisions of the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. K.S.A. 2019 Supp. 44-556(a). The KJRA sets forth several grounds upon which an appellate court may grant relief. See K.S.A. 77-621(c)(1)-(8). Relevant to the issues on appeal are K.S.A. 77-621(c)(4) ("the agency has erroneously interpreted or applied the law") and K.S.A. 77-621(c)(7) ("the agency action is based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act").

To the extent statutory interpretation is at issue, it presents a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). Our review over questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 514, 154 P.3d 494 (2007). For purposes of the KJRA:

> "'[I]n light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the

record as a whole, the court shall not reweigh the evidence or engage in de novo review." K.S.A. 77-621(d).

When reviewing whether the Board's findings are supported by substantial competent evidence,

> "[w]e review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of witnesses. Thus, we will uphold the Board's decision if it is supported by substantial evidence, even though there is other evidence in the record supporting contrary findings." *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 614, 256 P.3d 828 (2011).

Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *Geer v. Eby*, 309 Kan. 182, 190, 432 P.3d 1001 (2019). "The burden of proving the invalidity of agency action is on the party asserting invalidity." K.S.A. 77-621(a)(1).

*Hughes' depression was not a compensable work-related condition.*

Hughes argues the Board erred in finding his depression was not a compensable psychological injury. However, Hughes does not clearly state which provision of K.S.A. 77-621(c) provides him the relief he seeks. It appears he is arguing the Board's decision is contrary to the evidence and/or the Board misinterpreted or misapplied the applicable legal standard. See K.S.A. 77-621(c)(4) and (7). Psychological injuries are sometimes referred to as traumatic neurosis. See *Gleason v. Samaritan Home*, 260 Kan. 970, 977, 926 P.2d 1349 (1996). "'In order to establish a compensable claim for traumatic neurosis under the Kansas Workers Compensation Act, K.S.A. 44-501 *et seq.*, the claimant must establish: (a) a work-related physical injury; (b) symptoms of the traumatic neurosis; and (c) that the neurosis is directly traceable to the physical injury.' *Love v. McDonald's*

6

*Restaurant*, 13 Kan. App. 2d 397, Syl., 771 P.2d 557, *rev. denied* 245 Kan. 784 (1989)." *Gleason*, 260 Kan. at 977.

Here, there is conflicting evidence on whether Hughes' depression resulted from a work-related psychological injury. Dr. Allen diagnosed Hughes with major depressive disorder, which she believed was directly traceable to his work injury and assigned a 10% whole body impairment. However, Dr. Steffan concluded Hughes was not depressed and found no psychological impairment. Hughes argues Dr. Steffan's opinion "is simply not supported by the medical evidence." Specifically, he asserts Dr. Steffan's opinion was only based on the fact Dr. Steffan believed Dr. Allen's testing results were invalid. Without citing to the record, Hughes claims "the testing results from the test administered by Dr. Molly Allen were interpreted to be valid and a diagnosis of Major Depressive Disorder was given and linked directly to the work injury."

Hughes really wants us to reweigh the evidence and resolve the two competing opinions. But we cannot reweigh evidence, resolve conflicting evidence, or make credibility determinations. *Saylor*, 292 Kan. at 614. While Hughes claims the basis for Dr. Steffan's opinion is incorrect, he provides no citation to the record in support of his assertion. Accordingly, he has not shown "the evidence supporting the agency's decision has been so undermined by cross-examination or other evidence that it is insufficient to support the agency's conclusion." *Herrera-Gallegos v. H&H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). "[W]e will uphold the Board's decision if it is supported by substantial evidence, even though there is other evidence in the record supporting contrary findings." *Saylor*, 292 Kan. at 614. Here, Hughes has merely shown there is other evidence in the record supporting contrary findings.

Hughes also fails to address the Board's discounting of Dr. Steffan's opinion. Specifically, the Board stated: "Given his loss of employment, constant pain, a death of a son, disappointment in the other son, lack of sleep, and 100-pound weight gain, it would

7

be reasonable to conclude Hughes has some degree of depression or mental health deficit." The Board also acknowledged Dr. Steffan's criticism of Dr. Allen's opinion based on a lack of objective findings but stated such objective findings "are not needed to establish a claim of traumatic neurosis." Thus, the Board acknowledged and addressed the problems Hughes complains of on appeal, contrary to his position.

The Board noted Dr. Allen was the only medical professional who diagnosed Hughes with depression. The Board expressed concern Hughes did not seek opinions from the other medical professionals who treated him. The Board also noted Hughes did not consult with Dr. Allen until 29 months after his injury and only did so based on his attorney's request for an evaluation. The Board additionally noted Hughes did not seek a preliminary hearing to request court-ordered mental health treatment while the matter was pending. The Board also noted Hughes' testimony before the ALJ did not reflect his claims for depression and anxiety. The ALJ observed Hughes' live testimony, and the Board concluded it could give deference to the ALJ's conclusion Hughes did not suffer a mental health impairment.

In evaluating Dr. Steffan's opinion, the Board properly weighed the evidence and resolved conflicting evidence. Hughes does not address the Board's concerns with the timing and circumstances of his consultation with Dr. Allen, his failure to seek court-ordered treatment, his failure to testify regarding his depression and anxiety before the ALJ, or the ALJ's conclusions based on his observations of Hughes' testimony. Hughes has not met his statutory burden to show error in the Board's decision. See K.S.A. 77-621(a)(1).

*The injury to Hughes' left shoulder does not result in permanent total disability.*

Hughes next argues the Board erred in failing to find the injury to his left shoulder resulted in a permanent total disability. Hughes fails to recognize K.S.A. 2019 Supp. 44-510d.

K.S.A. 2019 Supp. 44-510d(b)(13) and (21) provide loss of use of a shoulder joint is a statutorily scheduled injury. Specifically, K.S.A. 2019 Supp. 44-510d(c) provides: "Whenever the employee is entitled to compensation for a specific injury under the foregoing schedule, the same shall be exclusive of all other compensation . . . , and no additional compensation shall be allowable or payable for any temporary or permanent, partial or total disability."

In its order, the Board noted Hughes did not file a brief. Hughes' lack of briefing to the Board makes it unclear whether he was claiming permanent total disability based on the injury to his left shoulder alone before the ALJ. At the hearing before the ALJ, Hughes claimed he suffered injuries to both shoulders as well as a psychological injury. The City denied Hughes' right shoulder injury and depression were work-related but admitted he suffered a work-related injury to his left shoulder. Hughes did not file a submission letter with the ALJ to clarify his arguments. To the extent Hughes asserted he suffered a permanent total disability before the ALJ, it appears he based this argument on his claims of depression and bilateral shoulder injuries. We are unable to find in his argument before the ALJ any clear indication Hughes asserted a permanent total disability claim based on his left shoulder injury alone. We deem the issue waived or abandoned based on Hughes' failure to raise it below. See *Scheidt v. Teakwood Cabinet & Fixture, Inc.*, 42 Kan. App. 2d 259, 264, 211 P.3d 175 (2009) ("An appellate court will not consider an issue in a workers'-compensation appeal if it was not raised in the administrative hearing."), *rev. denied* 290 Kan. 1095 (2010).

Even if the Board had considered Hughes' claim, his argument would still fail on the merits. Hughes relies on Dr. Barnett's opinion he was "'probably unemployable.'" Hughes argues the Board erred by disregarding undisputed evidence. It is not fully clear under which provision of K.S.A. 77-621(c) Hughes is arguing he is entitled to relief, because he does not cite a specific statutory provision in his brief. It appears to us he is arguing the Board's decision was unsupported by substantial competent evidence. See K.S.A. 77-621(c)(7).

Hughes' argument lacks persuasion because he fails to show he "has been rendered completely and permanently incapable of engaging in any type of substantial and gainful employment." See K.S.A. 2019 Supp. 44-510c(a)(2). Rather, the evidence shows Hughes was unable to perform 12 of the 13 essential tasks required for his job with the City. Dr. Joyce testified Hughes was unable to perform those job duties; however, Dr. Joyce indicated the necessity for future medical procedures would depend on whether Hughes worked at a sedentary job or resumed work in manual labor.

Although Hughes had lifting restrictions imposed as a result of his shoulder injury, nothing in the record suggests Hughes would have been incapable of working at a sedentary job. At best, the evidence suggests Hughes would not be able to get another job performing manual labor. This does not mean he is or will be "completely and permanently incapable of engaging *in any type of substantial and gainful employment*." (Emphasis added.) K.S.A. 2019 Supp. 44-510c(a)(2). Moreover, Dr. Barnett indicated Hughes' employability was undermined by the fact Hughes had not sought job service assistance or vocational rehabilitation. Dr. Barnett stated Hughes was "not doing any of the things you would normally expect somebody to do." And Dr. Barnett agreed Hughes was essentially not engaged in a good-faith effort to find employment. Even if the Board had decided the issue, Hughes would not be able to prove the injury to his left shoulder amounted to a permanent total disability.

The evidence was substantial and, when viewed in a light most favorable to the City, supports the Board's assignment of 13% permanent partial disability to Hughes' left shoulder.

Affirmed.